UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GRACIELA S.,

            Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

**DECISION AND ORDER**

6:23-CV-06435 EAW

# INTRODUCTION

Represented by counsel, plaintiff Graciela S. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure[1] (Dkt. 8; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, the Commissioner's motion (Dkt. 9) is granted, and Plaintiff's motion (Dkt. 8) is denied.

---

[1] Plaintiff filed her motion as "Memorandum/Brief" rather than a motion, but the Court will treat it as Plaintiff's motion for judgment on the pleadings. (Dkt. 8).

**BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on September 11, 2017. (Dkt. 5 at 22, 162-177).[2] In her applications, Plaintiff alleged disability beginning September 6, 2017. (*Id.* at 22, 162, 169). Plaintiff's applications were initially denied on October 12, 2017. (*Id.* at 22, 84-90). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Hortensia Haaversen on August 2, 2019. (*Id.* at 36-63). On September 25, 2019, the ALJ issued an unfavorable decision. (*Id.* at 19-31). Plaintiff requested Appeals Council review; her request was denied on June 24, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 8-13).

Plaintiff appealed to the United States District Court for the Western District of New York. The matter was remanded by United States District Judge Frank P. Geraci, Jr., for further administrative proceedings. (*Id.* at 974-79). A second hearing was held by telephone on August 11, 2022, before ALJ Brian Battles. (*Id.* at 816, 841-912). An unfavorable decision was issued on September 9, 2022. (*Id.* at 816-31). Plaintiff again requested Appeals Council review, and her request was denied on June 23, 2023. (*Id.* at 806-11). This action followed.

**LEGAL STANDARD**

I.  **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by

---

[2]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to

perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2021. (Dkt. 5 at 819). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since September 6, 2017, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease and bilateral carpal tunnel syndrome. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 822). The ALJ particularly considered the criteria of Listings 1.15, 1.16, and 11.14 in reaching this conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except:

> [Plaintiff] requires the use of an assistive device, such as a cane, to ambulate. [Plaintiff] can occasionally stoop, kneel, crouch, and crawl. [Plaintiff] can occasionally climb ramps and stairs. [Plaintiff] can never climb ladders, ropes, or scaffolds. [Plaintiff] can frequently handle, finger, and reach with the left, non-dominant, upper extremity. [Plaintiff] can never work in hazardous environments, such as at unprotected heights or around moving mechanical parts.

(*Id.* at 823). At step four, the ALJ found that Plaintiff was able to perform past relevant work as a tax preparer. (*Id.* at 830). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 831).

**II.     The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the Commissioner's determination is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions from Oliver Masaba, M.D. (Dkt. 8 at 12-18). The Court has considered Plaintiff's arguments and, for the reasons discussed below, finds them to be without merit.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Under the amendments to the Social Security regulations related to the evaluation of medical evidence for disability claims filed after March 27, 2017, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, the ALJ "will articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all prior administrative medical findings" in claimant's record based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "[o]ther factors." *Id.* §§ 404.1520c(c); 416.920c(c). The source of the opinion is not the most important factor in evaluating its persuasive value. *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). Rather, the most important factors in evaluating persuasiveness are supportability and consistency. *Id.*

"Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical

- 6 -

opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 8 (W.D.N.Y. 2021) (internal citation omitted). Specifically, the ALJ must explain how he considered the supportability and consistency factors, and may, but is not required to, consider the three remaining factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Generally, the "supportability" factor "asks how well a medical source supported their opinion(s) with 'objective medical evidence' and 'supporting explanations,'" while "[t]he 'consistency' factor calls for a comparison between the medical source's opinion and 'evidence from other medical sources and nonmedical sources' in the file." *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *14 (S.D.N.Y. Jan. 29, 2021), *adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022) (citing 20 C.F.R. §§ 404.1520c(c)(1), 404.1520c(c)(2)). Although the ALJ's failure to adequately explain how he considered the supportability and consistency of a medical opinion in the record constitutes procedural error, it does not always lead to a reversal of the ALJ's findings if "a searching review of the record assures [the court] 'that the substance of the [regulation] was not traversed.'" *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

Here, the ALJ evaluated several medical opinions contained in the record to arrive at Plaintiff's RFC. (Dkt. 5 at 25-30). Plaintiff challenges the ALJ's evaluation of Dr. Masaba's opinions. (Dkt. 8 at 12-18). The Court finds no error.

The record contains three opinions from Dr. Masaba. (Dkt. 5 at 353-61, 589-96; Dkt. 5-1 at 858-65). On January 2, 2018, Dr. Masaba opined that Plaintiff could occasionally lift and carry up to 10 pounds but could never lift and carry more than 10 pounds, and could sit for 30 minutes and stand or walk for 15 minutes at one time without interruption. (Dkt. 5 at 353-54). Dr. Masaba noted that Plaintiff required the use of cane to ambulate if she was going further than one block. (*Id.*). He also opined that Plaintiff could frequently reach with either hand, was continuously capable of handling, fingering, and feeling, and was occasionally able to push or pull. (*Id.* at 356). Dr. Masaba stated Plaintiff could occasionally climb stairs and ramps and balance, but should never climb ladders or scaffolds, stoop, kneel, crouch, or crawl. (*Id.* at 357). Dr. Masaba found that Plaintiff faced environmental limitations as well, including that Plaintiff should never be exposed to unprotected heights, humidity and wetness, extreme cold, and vibrations. (*Id.* at 358). Dr. Masaba noted that Plaintiff cannot perform activities like shopping, walking a block at a reasonable pace on uneven or rough surfaces, using public transportation, or climbing a few steps at a reasonable pace with the use of a single handrail, but can travel without a companion for assistance, ambulate without using a wheelchair, walker, two canes, or crutches, prepare a simple meal and feed herself, care for her personal hygiene, and sort, handle, and use paper or files. (*Id.* at 359). Dr. Masaba concluded that Plaintiff's "[p]ain will negatively impact productivity by greater than 20-25%." (*Id.* at 361). In other words, that Plaintiff's pain is "[d]isabling." (*Id.*).

On July 24, 2019, Dr. Masaba again concluded that Plaintiff could lift and carry up to 10 pounds, but no heavier. (*Id.* at 589). Dr. Masaba noted that Plaintiff "has pain in her

lower back that radiates to bilateral lower extremities." (*Id.*). He determined Plaintiff could sit or stand for 15 minutes and walk for 20 minutes at one time without interruption. (*Id.* at 590). Dr. Masaba stated that Plaintiff required the use of a cane to ambulate and could ambulate 20 to 30 feet without the use of a cane. (*Id.*). Dr. Masaba concluded Plaintiff could frequently reach, continuously handle, finger, and feel, and occasionally push or pull with her right hand, but due to a new condition involving her left shoulder which Dr. Masaba had not seen her for, Plaintiff could never reach overhead, occasionally reach in other directions and push or pull, and continuously handle, finger, and feel with her left hand. (*Id.* at 592.). Dr. Masaba noted that Plaintiff could frequently operate foot controls with her right foot, but only occasionally with her left foot. (*Id.*). As to her environmental limitations, Dr. Masaba found Plaintiff could occasionally tolerate exposure to unprotected heights, moving mechanical parts, the operation of a motor vehicle, humidity and wetness, and extreme heat and cold. (*Id.* at 593). Dr. Masaba determined that Plaintiff could never tolerate vibrations, but could frequently be exposed to dust, odors, fumes, and pulmonary irritants. (*Id.*). Dr. Masaba stated that Plaintiff's "[r]educed balance makes unprotected h[eigh]ts dangerous. Chronic pain [and] weakness makes moving mechanical parts difficult." (*Id.*). Dr. Masaba opined that Plaintiff could occasionally climb stairs and ramps, balance, and stoop, but could never climb ladders or scaffolds, kneel, crouch, or crawl. (*Id.* at 594). Dr. Masaba found Plaintiff could perform activities like shopping, travelling without a companion for assistance, ambulating without using a wheelchair, walker, two canes, or crutches, climbing a few steps at a reasonable pace with the use of a single hand rail, preparing simple meals and feeding herself, caring for her

personal hygiene, and sorting, handling, or using paper or files. (*Id.* at 595). But Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces or use public transportation. (*Id.*). Dr. Masaba concluded that Plaintiff's "[p]ain will negatively impact productivity by greater than 20-25%." (*Id.* at 596).

Finally, on February 22, 2021, Dr. Masaba again opined that Plaintiff could occasionally lift and carry 10 pounds but could not lift and carry any heavier weight. (Dkt. 5-1 at 858). Dr. Masaba stated that Plaintiff could sit, stand, and walk for 25 minutes. (*Id.* at 859). Dr. Masaba noted Plaintiff required the use of a cane to ambulate and can ambulate 30 to 40 feet without the use of a cane. (*Id.*). Dr. Masaba opined that Plaintiff has "weakness [and] numbness affecting the left leg causing difficulty w[ith] ambulating. . . . Left leg has at times given out w[ith Plaintiff] falling." (*Id.*). Dr. Masaba opined that Plaintiff could frequently reach overhead, continuously reach in different directions, handle, finger, and feel, and occasionally push or pull with her right hand, but could only occasionally reach overhead and push or pull and frequently reach in other directions, handle, finger, and feel with her left hand. (*Id.* at 861). Dr. Masaba found Plaintiff could frequently operate foot controls with her right foot and occasionally with her left foot. (*Id.*). Dr. Masaba noted that Plaintiff could occasionally climb stairs and ramps, balance, and stoop, but could never climb ladders or scaffolds, kneel, crouch, or crawl. (*Id.* at 862). As to Plaintiff's environmental limitations, Plaintiff could never tolerate unprotected heights and vibrations, could occasionally move mechanical parts, operate a motor vehicle, and handle humidity and wetness or extreme cold. (*Id.* at 863). Further, Plaintiff could frequently tolerate extreme heat and continuously tolerate dust, odors, fumes, and

pulmonary irritants. (*Id.*). Dr. Masaba opined Plaintiff has limited "ability to work around moving parts or drive more than a few minutes." (*Id.*). Dr. Masaba determined Plaintiff could perform activities like shopping, travelling without a companion for assistance, ambulating without using a wheelchair, walker, two canes, or crutches, climbing a few steps at a reasonable pace with the use of a single hand rail, preparing a simple meal and feeding herself, caring for her personal hygiene, and sorting, handling or using paper or files. (*Id.* at 864). But Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces or use public transportation. (*Id.*). Dr. Masaba concluded that Plaintiff's "[p]ain will negatively impact productivity by greater than 20-25%." (*Id.* at 865).

The ALJ assessed each of the three opinions separately. He found Dr. Masaba's January 2, 2018 opinion unpersuasive, explaining:

> This opinion was supported with reference to [Plaintiff's] abnormal physical examination findings and diagnostic imaging. However, the degree of limitation opined is not consistent with the longitudinal record. While the longitudinal record is generally consistent with exertional, postural, manipulative, and environmental limitations, and is consistent with the need for an assistive device, [Plaintiff's] objective findings throughout the record are not consistent with the limitations opined regarding her ability to sit, stand, or walk at one time; her ability to sit in total; the degree of manipulative, postural and environmental limitations opined; or the loss of productivity or need to be absent from work. As discussed above, diagnostic imaging of her lumbar spine, sacroiliac joint changes, and her right shoulder; her normal and abnormal physical examination findings; her performance during her consultative evaluation; her use of a cane to ambulate; her generally conservative treatment and reported improvement with medication; her subjective complaints; and her activities of daily living are consistent with a limitation to work at the sedentary exertional level with the above postural, manipulative, and environmental limitations and the allowance for the use of an assistive device to ambulate (Hearing; Exhibit 5F/8/9/14/17/29/31; 28F/56/66; 29F/7/66; 30F/65; 31F/5/95/96; 32F; 36F/138/142/154/160; 37F/2/6/9; 45F).

(*Id.* at 828).

The ALJ similarly found the July 2019 opinion unpersuasive. The ALJ explained his reasoning as follows:

> This opinion was supported with reference to [Plaintiff's] subjective complaints of her symptoms, diagnostic imaging of her lumbar spine, abnormal physical examination findings, and the side effects of her medication. However, while the longitudinal record is generally consistent with exertional, postural, manipulative, and environmental limitations, it is not consistent with the degree of limitation opined regarding [Plaintiff's] need to change positions, how long she is able to walk, sit, or stand at one time, or the degree of manipulative, postural, or environmental limitations opined. As discussed above, diagnostic imaging of her lumbar spine, sacroiliac joint changes, and her right shoulder; her normal and abnormal physical examination findings; her performance during her consultative evaluation; her use of a cane to ambulate; her generally conservative treatment and reported improvement with medication; her subjective complaints; and her activities of daily living are consistent with a limitation to work at the sedentary exertional level with the above postural, manipulative, and environmental limitations and the allowance for the use of an assistive device to ambulate (Hearing; Exhibit 5F/8/9/14/17/29/31; 28F/56/66; 29F/7/66; 30F/65; 31F/5/95/96; 32F; 36F/138/142/154/160; 37F/2/6/9; 45F).

(*Id.* at 828-29).

Finally, the ALJ found Dr. Masaba's February 2021 opinion somewhat persuasive. He explained the reasoning for that conclusion as follows:

> This opinion was supported with reference to [Plaintiff's] reported pain and other symptoms; her objective physical findings; and diagnostics of her lumbar spine. However, the longitudinal record is not consistent with the limitations opined regarding the amount of time [Plaintiff] can sit, stand, and walk at one time, or with the degree of postural, manipulative, or environmental limitations opined. As discussed above, diagnostic imaging of her lumbar spine, sacroiliac joint changes, and her right shoulder; her normal and abnormal physical examination findings; her performance during her consultative evaluation; her use of a cane to ambulate; her generally conservative treatment and reported improvement with medication; her subjective complaints; and her activities of daily living are consistent with a limitation to work at the sedentary exertional level with the above postural, manipulative, and environmental limitations and the allowance for the use of an assistive device to ambulate (Hearing; Exhibit 5F/8/9/14/17/29/31;

28F/56/66; 29F/7/66; 30F/65; 31F/5/95/96; 32F; 36F/138/142/154/160; 37F/2/6/9; 45F).

(*Id.* at 829-30).

Plaintiff argues that "[t]he ALJ's determination lacks any coherent explanation identifying what evidence contradicts the level of Dr. Masaba's opined limitations," and that "the ALJ seems to rely solely on his own interpretation of the same evidence he himself just found was supportive of the doctor's opinions" and "[a]t no point does the ALJ identify a piece of medical evidence that suggests Plaintiff is limited in the same area opined to by Dr. Masaba but not to the same degree." (Dkt. 8 at 15-16). The Court disagrees.

As an initial matter, the ALJ properly articulated his consideration of the medical opinion evidence and did not merely rely on his own judgment in doing so. To be sure, "[a]n ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion." *Quinto v. Berryhill*, No. 3:17-CV-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted); *see also Soropoulos v. Comm'r of Soc. Sec.*, No. 22-CV-8688 (RWL), 2023 WL 8448211, at *9 (S.D.N.Y. Dec. 6, 2023) ("Put another way, ALJs may not, of course 'play doctor' by using their own lay opinions to fill evidentiary gaps in the record." (quoting *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022))). And "an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted); *Arias v. Saul*, No. 18-cv-1296 (KAM), 2020 WL 1989277, at *7 (E.D.N.Y. Apr. 25, 2020) ("The ALJ should have obtained a medical opinion from a

qualified source, as her RFC could not stand if unsupported by at least one medical opinion.").

But here, in the decision, the ALJ assessed medical opinion evidence from multiple providers, including Dr. Masaba. And in concluding that Dr. Masaba's opinions were not persuasive, contrary to Plaintiff's contentions, the ALJ pointed to Plaintiff's longitudinal medical record, diagnostic imaging, physical examination findings, performance during consultative evaluation, generally conservative treatment and reported improvement with medication, and activities of daily living, to support his conclusions. This analysis comported with the required regulatory factors.

Specifically, in the decision, which must be read as whole, the ALJ cited to numerous treatment records which support his determination. For example, the ALJ cited to medical records which showed that Dr. Masaba's described limitations for Plaintiff are greater than is warranted by Plaintiff's medical records. He cited to medical imaging showing "[n]ormal lumbar spine radiographs" and "[m]ild bilateral sacroiliac joint degeneration[,]" (Dkt. 5 at 341), and the conclusions are supported by the existence of numerous treatment records throughout the administrative record which document Plaintiff to have normal or mildly antalgic gait (*id.* at 248, 321, 332, 412, 417, 429, 460, 470; Dkt. 5-1 at 131, 143, 245, 626, 638, 646, 654, 662, 680, 688, 694, 707, 873, 884, 893, 918, 926, 933, 939, 947, 958, 967, 976, 984, 992, 999), no limitations on sitting (Dkt. 5 at 249, 321, 332, 352, 379, 419, 426, 431, 460, 471; Dkt. 5-1 at 145, 709-10, 874, 1036), and the ability to tolerate physical therapy treatment well (Dkt. 5 at 323, 324, 326, 335, 337, 339, 559; Dkt. 5-1 at 877, 878, 879, 887, 888, 896, 898, 900, 902, 904, 906, 908, 910). It was

appropriate for the ALJ to consider the clinical test results and lack of objective findings to support his determination not to fully credit Dr. Masaba's opinions. *See Michael M. v. Comm'r of Soc. Sec.*, No. 5:23-CV-752 (DNH/DJS), 2024 WL 4110740, at *3 (N.D.N.Y. Aug. 15, 2024) ("[T]he ALJ was entitled to rely on the lack of any evidence suggesting Plaintiff had a back impairment."), *report and recommendation adopted*, 2024 WL 4107688 (N.D.N.Y. Sept. 6, 2024); *Rosemond R. v. Comm'r of Soc. Sec.*, No. 1:22-CV-225-DB, 2024 WL 3361809, at *4 (W.D.N.Y. July 10, 2024) ("In addition to the opinion evidence, the ALJ properly considered Plaintiff's treatment history, including Plaintiff's unremarkable examination findings and other objective medical evidence of record, and reasonably determined that Plaintiff retained the RFC to perform sedentary work.").

In addition to the treatment records, the ALJ also relied on other medical opinions in the record in crafting the RFC. For example, State agency consultants at the initial level opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently, could stand or walk for four hours and sit for six hours in an eight-hour workday and occasionally perform all postural activities, opinions which the ALJ explained his reasoning to deem of limited persuasiveness. (Dkt. 5 at 825). Steven Hausmann, M.D., opined in November of 2017 that Plaintiff was capable of sedentary work with frequent position changes, and lifting of not more than 30 pounds maximally and 10 to 15 pounds repetitively, which the ALJ also found to be of limited persuasiveness. (*Id.* at 826). John A. Orsini, M.D., opined in June 2018 that Plaintiff had a lifting restriction of 15 pounds, which the ALJ found to be unpersuasive because the record supports more limitations than those opined by Dr. Orsini. (*Id.* at 827). The ALJ found Dr. Orsini's March 2019 opinion

that Plaintiff could occasionally lift up to 20 pounds and frequently lift 30 pounds to be of limited persuasiveness, again finding that the record supported greater limitations. (*Id.*). Consultative examiner Raquel Benchoam-Ravid, M.D., opined in September 2020 that Plaintiff should avoid activities requiring visual acuity and unprotected heights and had marked limitations for prolonged walking, standing, climbing, lifting, carrying, reaching, bending, squatting, and kneeling. The ALJ found this opinion minimally persuasive, citing to medical records inconsistent with those conclusions and explained his reasoning for doing so. (*Id.* at 829). Thus, contrary to Plaintiff's implication, this is not a case where the ALJ disregarded a well-supported medical opinion and fashioned an RFC from whole cloth.

In addition, the ALJ's consideration of Plaintiff's relatively conservative treatment and reported improvement with medication was also appropriately considered in assessing the evidence. *See Jeffrey R. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00709-EAW, 2023 WL 2581539, at *5 (W.D.N.Y. Mar. 21, 2023) ("[T]he ALJ here properly considered the impact of Plaintiff's medication intake on his symptoms."); *Chris P. v. Comm'r of Soc. Sec.*, No. 20-CV-1660, 2022 WL 4493928, at *4 (W.D.N.Y. Sept. 28, 2022) ("The ALJ found Dr. Pradhan's opinion persuasive given that Plaintiff had required only conservative treatment. This was entirely appropriate."); *Rayshown M. v. Comm'r of Soc. Sec.*, No. 6:20-CV-07001 EAW, 2022 WL 4298263, at *5 (W.D.N.Y. Sept. 19, 2022) ("A plaintiff's receipt of conservative treatment is an appropriate consideration by the ALJ."). Likewise, Plaintiff's reported activities of daily living were appropriately assessed by the ALJ. *See Daniel F. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00292 EAW, 2023 WL 6304722, at *7 (W.D.N.Y.

Sept. 28, 2023) ("In addition, it is well-settled that an ALJ may consider the consistency of a claimant's activities of daily living with other evidence of record when evaluating credibility and determining the RFC.").

In short, and as explained above, the limitations included in the RFC are well-supported by the evidence, including the opinion evidence, in the record. Plaintiff's arguments largely amount to a disagreement with the ALJ's weighing of the evidence, and it is not for the Court to reweigh the evidence, as it is the ALJ's duty to resolve conflicts among medical evidence in the record. *See Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."); *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence. . . . In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (citation and quotation omitted)). Indeed, the ALJ's assignment of sedentary work reflects that he credited much of the same evidence Plaintiff emphasizes but any conflicts in the record were appropriately resolved by the ALJ, as he is tasked to do in crafting an RFC. *See Donald A. v. Saul*, No. 1:19-CV-01146-MJR, 2021 WL 672043, at *6 (W.D.N.Y. Feb. 22, 2021) ("The presence of conflicting medical evidence is not uncommon, and it is the ALJ's duty to resolve those conflicts."). Accordingly, remand is not required.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

                                                                       ELIZABETH A. WOLFORD
                                                                       Chief Judge
                                                                       United States District Judge

Dated:      July 9, 2025
              Rochester, New York